HARRIMAN LAND COMPANY *v.* GEORGE HILTON *et al.*

*(Knoxville.* September Term, 1908.)

1. **DEEDS OF CONVEYANCE.** May refer to prior deed for description, without reference to its registration; identification by parol evidence, when.

A deed of conveyance of land may refer to a prior deed for the description and identification of the land intended to be conveyed, and where the reference is sufficiently definite to refer to some particular tract of land, parol evidence is admissible to aid in its identification, and to show that the said prior deed is duly recorded, though that fact is not indicated in the reference, especially in a case arising upon facts occurring prior to the statute (Acts 1895, ch. 38) requiring the assurance of title to be registered to make adverse possession under it effective. *(Post, pp.* 310-319.)

Code cited and construed:  Sec. 4456 (S.).

Acts cited and construed:  Acts 1895, ch. 38.

Cases cited and approved:  Johnson v. Kellogg, 7 Heisk. 266; Swiney v. Swiney, 14 Lea, 316; Smith v. Graves, 15 Lea, 459; Byrd v. Phillips, 120 Tenn., 14, 21, 22.

2. **SAME.** Same. Sufficiency of reference to prior deed for description; case in judgment.

A deed of conveyance of land is sufficient in its reference to a prior deed for description and identification of the land intended to be conveyed, where it makes such reference in this language: "A five hundred acre tract, deed from J. F. Scott to William Lewellyn in the year 1852, lying on the east side of Emory river, in district, No. 4," where it is otherwise described in the deed as situated in the county of Morgan and State of Tennessee. *(Post, pp.* 310-319.)

Land Co. v. Hilton.

3. **SAME.** Variance in the number of the civil districts in different deeds in chain of title presumed to be caused by change of the districts, in absence of evidence, when.

Where a deed in the chain of title describes the land as lying in a certain civil district, and subsequent deeds describe the land as lying in another civil district, and there is no evidence whatever on the subject, and the point seems not to have been made in the chancery court, the supreme court will presume that the civil districts have been changed or renumbered. (*Post, pp.* 314, 318, 319.)

4. **SAME.** Delivery presumed at its date, though subsequently acknowledged, when.

The delivery of a deed of conveyance of land, in the absence of proof to the contrary, is presumed to have been made at the date of the deed, although its acknowledgment appears to have been made at a subsequent date.   (*Post, pp.* 319-322.)

Case cited and approved:  Note under Blanchard v. Tyler, 86 Am. Dec., 63.

Case cited and distinguished:  Tompkins v. Bamberger, 3 Lea, 579.

---

FROM MORGAN.

---

Appeal from the Chancery Court of Morgan County. —D. L. LANSDEN, Chancellor.

H. M. CARR and L. RISEDEN, for complainant.

S. C. BROWN, J. A. MONROE, J. M. DAVIS, and MAX SCHOETZ, JR., for defendants.

---

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The object of this bill is to recover the possession of a tract of land in Morgan county comprising about 863½ acres. It is alleged that the defendants George Hilton, M. N. Schoetz, and others had wrongfully taken possession of said lands and were withholding same from complainant. The bill also prayed for an accounting to ascertain the amount of timber cut by defendants and other damages inflicted upon the premises and for a decree for the value thereof. The defendants filed their joint and separate answers in which they expressly denied that complainant was the owner of the land described in the bill, but averred that defendants were the true and lawful owners and that their possession was lawful. Complainant especially relies upon the adverse possession of said land for more than seven years under a color of title. A large number of witnesses were examined by each side and the result of said examination is found in a very voluminous record.

The chancellor on the hearing was of opinion that the allegations of the bill were met and denied by the answer and were not sustained by the proof, whereupon he dismissed the bill with costs. Complainant appealed, and has assigned the action of the chancellor in dimissing his bill as error.

Complainant deraigns its title to entry, No. 2347, and grant, No. 25507, issued by the State of Tennessee to Julian F. Scott, December 6, 1845. The defendants

deraign their title to entry, No. 1958, and grant, No. 21848, dated June 28, 1838. It appears that both titles cover the land in controversy, and ordinarily the defendants' title, being older, would prevail. Complainant, however, claims an adverse possession of more than seven years, that is to say, from 1852 to 1862, which perfected its title and made it superior to the title of the defendants. Complainant relies on what is known in the record as the Henderson possession, which lies just north of the north line of entry 2347.

It is conceded that entry, No. 2347, owned by Julian F. Scott at the time he conveyed the lands in question to William Lewellyn in the year 1852 does not cover all the lands included in his deed to said Lewellyn, but it is claimed by complainant that said Lewellyn went into the actual possession of said lands and held them adversely for more than seven consecutive years, thereby perfecting his title to the entire boundary. The Henderson possession relied on by complainant is outside of the north line of entry, No. 2347, and if that possession has been continuous and adverse, it perfected complainant's title to the entire boundary covered by the deeds. It is conceded that entry, No. 2347, only covers a small portion of the land in controversy, but the remainder of the land is embraced within the boundaries described in the deed from Julian F. Scott to William Lewellyn, dated November 20, 1852.

Defendants deny, first, that complainant had any color of title to the land in controversy; and, second,

the adverse possession of said lands claimed by complainant.

It is claimed by the complainant that William Lewellyn, its predecessor in title, maintained an adverse possession of the Henderson tract, comprising about twenty acres, continuously for a period exceeding seven years, under his deed from Julian F. Scott, dated November 20, 1852, but not acknowledged until November 22, 1858.

We will first determine whether the complainant has established a color of title to the land in controversy. In complainant's deraignment of title there appears a deed from William Lewellyn to James H. Lewellyn, dated September 5, 1876. The deed describes several tracts of land, but the one in controversy is described in said deed as follows: *Second tract.* "A five hundred acre tract, deed from J. F. Scott to William Lewellyn in the year 1852, lying on the east side of Emory river, in district, No. 4."

It is conceded that this deed is a vital link in complainant's deraignment of title. The validity of this deed is attacked by counsel for defendant (1) for insufficiency of the description of the land, and (2) because it does not appear that said deed was ever delivered.

Counsel for defendants objected to the reading of the deed from William Lewellyn to James H. Lewellyn on the ground that it was void for insufficiency of description. The chancellor sustained the objection and ex-

cluded the deed. It is insisted by the complainant that the deed from William Lewellyn to his son James Lewellyn expressly refers for description to a deed in the year of 1852 from Julian F. Scott to William Lewellyn, and that this deed may be looked to to supply any deficiency in the description. The reference in the second deed as already seen is as follows: "A five hundred acre tract, deed from Julian F. Scott to William Lewellyn in the year of 1852."

It is said the chancellor was of opinion that this reference was insufficient to authorize the court to look to the deed from J. F. Scott to William Lewellyn made in the year 1852, but that the reference should have been to a recorded deed, giving the book and page where registered.

Complainant also introduced J. H. Lewellyn, the vendee in the deed from William Lewellyn, made September 5, 1876, who testified that the land described as the second tract in his deed is the same land which his father William Lewellyn purchased from Julian F. Scott in the year 1852, and is the land in controversy in the present suit.

It is conceded that, if complainant can supply the insufficient description in the deed of 1876 with the deed from Scott to Lewellyn made in 1852, the description is complete, since the land is described in the latter deed by metes and bounds. The deed from Julian F. Scott to William Lewellyn made in the year 1852 is not referred to in the later deed as a recorded con-

veyance, but as a matter of fact the deputy register of Morgan county testified that the said deed was recorded and was the only deed on record made by Julian F. Scott to William Lewellyn in the year 1852. The chancellor, however, on exception of defendants, held the description in the deed from William Lewellyn to' James H. Lewellyn September 5, 1876, was too vague and indefinite to admit parol testimony to aid the description, and he accordingly sustained exceptions to the testimony of James H. Lewellyn who testified that the land described in the bill is the same tract of land intended to be conveyed in the deed from his father to him in 1876. Complainant assigns as error the action of the chancellor in excluding the evidence of James H. Lewellyn and insists it was competent to prove by this witness, who was the vendee of the deed in question, the identity, location, etc., of the land as well as the intention of the parties in making the contract of sale. In support of the action of the chancellor in excluding this evidence, it is said that in the Lewellyn deed the land is described as lying in district, No. 4, of Morgan county, while the land sued for by complainant lies in the Ninth district of Morgan county. Again, that the land in controversy comprises $863\frac{1}{2}$ acres, while only a 500-acre tract is referred to in the description. It is objected that the reference is not to any particular deed from Scott to Lewellyn, except that it was made in the year of 1852, while Scott may have made a dozen deeds to Lewellyn

in 1852. It is said, moreover, that later deed does not recite the 500-acre tract attempted to be conveyed is described in the deed of J. F. Scott to William Lewellyn and that the words "deed from J. F. Scott to William Lewellyn in the year 1852" do not afford any identification of the 500-acre tract. It is especially objected that there is no reference to a recorded deed or to the register's office.

It is conceded by the counsel for the complainant that, unless the deed in question contains intrinsic evidence of a reference to the deed from Julian F. Scott to William Lewellyn made in 1852, the latter deed could not be looked to to supply the description, and that parol evidence would not be admissible to aid defendants in the identification.

Such is the rule announced by the court in the case of *Johnson* v. *Kellogg*, 7 Heisk., 266. It is insisted, however, that the deed from William Lewellyn to James H. Lewellyn does import on its face to contain a distinct reference to said original deed for a further identification of the land. We think this is undoubtedly true, for otherwise there would be no purpose for a reference to the deed from J. F. Scott to William Lewellyn made in 1852.

We have been referred to no case holding that a reference in one deed to another for a more sufficient description of the land must be a duly recorded conveyance. It may be that such will be the rule since the passage of the act requiring an instrument or paper

relied on as color of title to be recorded. See chapter 38 in Acts of 1895; Shannon's Code, sec. 4456.

In *Byrd* v. *Phillips,* 120 Tenn., 14, 21, 22, 111 S. W. 1109, decided at the September term, 1907, it was said: "It is practically conceded that the rule relied upon by the complainant could have been invoked by his vendor, because it took title under a deed which simply referred to the grant issued to Eastland for description, without undertaking to set out the property by metes and bounds; for it is well settled that a reference to a prior deed or grant for description, without more, incorporates the description of that deed or grant in the later instrument. 2 Devlin on Deeds, sec. 1020, and cases cited in note. . . . The rule on this subject, with its limitations, is well stated on page 882, vol. 5, of Cyc., in these words: 'When land is described in a grant or conveyance by reference to another grant or conveyance, the description contained in the latter is regarded as adopted by and incorporated into the former, and the land therein described will pass.' "

In Hopkins on Real Property, p. 421, it is said: "Where land is described by means of reference to map or plat, the map or plat referred to becomes a part of the deed for the purpose of that conveyance and anything which appears thereon may affect the terms of the grant." . . .

"So, also, if the land is described by a mere reference to another deed in which the land is conveyed, the effect is the same as when the reference is to a map.

When the map or deeds are referred to for the purpose of description, they may be identified by parol evidence."

"Parol evidence is used to extend an imperfect reference in one document to another."  Wood on Statute of Frauds, sec. 387.

"But the writing relied upon to establish such a contract for the sale of land need not describe the lands which are the subject of the sale otherwise than by reference therein to some extrinsic fact or instrument by means of which the lands can be known with sufficient certainty." Id., sec. 397 (note).

"A description of land by reference to the title whereby it was acquired, as land received by the vendor from his father or land bought from a given person, is sufficient."  Page on Contracts, vol. 2, p. 1057.

In *Swiney* v. *Swiney*, 14 Lea, 316, the description in a deed as "two tracts of land adjoining each other in Marshall county, containing in all about 353½ acres, the land being the land on which I now reside" was held sufficient.  In that case Judge Freeman in delivering the opinion of the court, said:  "There should be a description of the land in the deed or in some paper to which it expressly refers."

In *Smith* v. *Graves*, 15 Lea, 459, the following description was held sufficient:  "All the mineral, coal, iron ore, fire and potter's clay, marble, building stone and other mineral, etc., etc., upon or under the farm or tract of land in the county of Scott in the State of Ten-

nessee, bounded and described as follows: All the fol-
lowing described lands on the waters of Wolfe creek,
in two tracts, and described, the first tract being fully
described in a deed from the heirs of M. P. Davis, de-
ceased; the second also described in a deed from the
aforesaid heirs, including the land on which the said
Joseph P. Davis now lives; an exception is made of
twenty-five acres where his house stands, including the
house and lying south of the same, containing in the
whole two hundred acres of land."

It will be observed that there is no particular de-
scription of the second tract except that it lies on the
east side of Emory river in district, No. 4, and it is
otherwise described as being situated in the county
of Morgan and State of Tennessee. It is shown by the
proof that the Emory river runs through Morgan
county for a distance of twenty-five or thirty miles,
and a description of land as lying on the east side of
Emory river in district, No. 4, would be very indefinite,
but when there is a reference in the deed to the deed
from Julian F. Scott to William Lewellyn in the year
1852, we think the description is sufficient.

It is suggested in the argument that while the deed
describes the land as lying in district, No. 4, that it
is actually located in the Ninth district of Morgan
county. It appears that this land is described in sub-
sequent deeds as being situated in the Ninth civil dis-
trict, but it does not appear whether this is correct or
not. There is no proof to show that the land described

is not located in the Fourth civil district.  It may be, and probably the explanation is, that the civil districts have been changed, since the deed in question was made describing the land as being in the Fourth civil district, but there is no proof whatever on this subject, and the point now raised does not seem to have been made in the court below.  We think the description in this deed necessarily refers to some particular tract of land and that parol evidence was admissible to aid its identification.  This deed refers to another deed which had been on record in Morgan county for more than twenty years, although it is not referred to as a recorded conveyance.  The evidence of James H. Lewellyn, vendee in the deed from William Lewellyn, to the effect that the land embraced in said deed is the land now in controversy, and that it was the only land his father owned in that section and had been deeded to him by Julian Scott in the year 1852, and that said deed was the instrument referred to, we think was competent evidence and should not have been excluded by the chancellor.

We are therefore of opinion that this reference to the former deed from Julian F. Scott to William Lewellyn in the year 1852, especially when the evidence of James H. Lewellyn is considered, clearly identifies the land in controversy.

It is next insisted on behalf of the defendants that there was no delivery of the deed from Julian F. Scott to William Lewellyn made in 1852 and that this fact would defeat the color of title under which the com-

plainant claims to have held adverse possession of the Henderson tract.

As already stated, complainant claims that William Lewellyn was in adverse possession of the Henderson tract from 1852 to 1862 under a color of title. It is insisted that the deed dated November 20, 1852, was not acknowledged until November 22, 1858, and, defendants insist, was not delivered until acknowledged. It is conceded by counsel for complainant that the acknowledgment of this deed was not made until six years after its execution. It is insisted on behalf of complainant that the presumption of law is that where a delivery is necessary the deed is delivered on the day it bears date.

In Lawson on Presumptive Evidence, pp. 102, 103, and notes, it is said: "If a deed concludes as 'witness our hands and seals,' and the testative clause speaks only of the signing and sealing, the presumption is that it was duly delivered."

"If there is no proof when a deed or note was delivered the presumption is that it was delivered on the day it bears date."

"If a deed is duly attested, the presumption is that it was duly delivered."

It has been held in this State that registration alone, nothing more appearing, would not establish a delivery. *Tompkins* v. *Bamberger*, 3 Lea, 579.

In this case, it is conceded that the deed was not acknowledged until six years after its execution, and

Land Co. v. Hilton.

it is contended that in such a case the presumption, in the absence of proof, would be that the deed was not delivered until the date of acknowledgment.

In 13 Cyc., p. 731, *c,* it is said: "A deed will, in the absence of evidence to the contrary, be presumed to have been delivered on the day on which it bears date, or, as is declared in some cases, on the date of its execution and acknowledgment. Again, it has been decided that where the date of a deed is prior to that of the acknowledgment, the presumption as to delivery on the day of date does not apply."

But we find that the decided weight of authority is that delivery, in the absence of proof to the contrary, is presumed to have been made at the date of the deed, although its acknowledgment appears to have been made at a subsequent date. Mr. Freeman in a note to *Blanchard* v. *Tyler,* 86 Am. Dec., 63, after stating the general rule that, where no other considerations enter into the question, and in the absence of proof to the contrary, a deed will be presumed to have been delivered at its date, and after citing a few cases holding that where the deed appears to have been acknowledged on a day subsequent to its date, it will be presumed to have been delivered on the later date, then states the rule thus: "But the weight of authority is against the position that the date of the acknowledgment should be taken *prima facie* as the date of its delivery, and in favor of the doctrine that, in the absence of all proof

to the contrary, even in cases where the acknowledgment bears date subsequent to the date of the deed, the presumption attaches that the deed was delivered on the day on which it bears date." Citing *People* v. *Snyder,* 41 N. Y., 397, 402; *Darst* v. *Bates,* 51 Ill., 439; *McConnell* v. *Brown,* Litt. Sel. Cas., 459; *Jayne* v. *Gregg,* 42 Ill., 413; *Blake* v. *Fash,* 44 Id., 302.

"In *Raines* v. *Walker,* 77 Va., 92, the court say that, in the absence of proof to the contrary, a deed will be presumed to have been delivered at its date; that a subsequent acknowledgment is by no means inconsistent with a prior delivery, or that at most it is not sufficient to rebut the presumption arising from its date. To the same effect is *Harmon* v. *Oberdorfer,* 33 Gratt., 502, [where] the court say that it may well happen that a deed is delivered and accepted either with an intention not to record it, or to have it acknowledged for that purpose at a subsequent time. The doctrine that where a deed has been acknowledged at a date subsequent to its date, its delivery will be presumed as of that date, is denied in *Clark* v. *Akin,* 16 Kan., 166. In *Ford* v. *Gregory,* 10 B. Mon., 180, the court go to the extent of saying that a subsequent acknowledgment is of itself evidence of a prior delivery."

The remaining question is whether complainant has established an open, notorious, and continuous adverse possession of the land in controversy. It is claimed by complainant that such a possession by William Lewellyn of the Henderson tract, comprising about twenty

Land Co. v. Hilton.

acres, from the years 1852 to 1862, has been established on the record. A large volume of proof was taken by the parties in support of their respective contentions on this subject, complainant having examined eighteen witnesses and the defendant fifteen witnesses. We cannot undertake, within the limits of an opinion, to review this testimony, which is conflicting and irreconcilable. It suffices to say that an examination of the record has failed to satisfy us that the complainant has made out a continuous adverse possesion of the Henderson tract with sufficient inclosures for a period of seven years, as required by the statute. There is no contention that any possession was kept up after the year 1862, but the insistence of complainant is that such an adverse and continuous possession is shown to have been had by William Lewellyn of the Henderson tract from the year 1852 to year 1861 or 1862. The complainant has failed to establish this contention by a preponderance of the evidence, and the result is that, for the reasons stated, the decree of the chancellor dismissing complainant's bill must be affirmed.